**Tagged Opinion**

ORDERED in the Southern District of Florida on _December 2, 2008_



_____
John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 08-19642-BKC-JKO |
| PETER D. LETTERESE, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| _____ | : | |

## ORDER DENYING VOLUNTARY DISMISSAL AND GRANTING
## MOTION TO CONVERT CASE TO A CASE UNDER CHAPTER 7

**THIS CASE** raises the interesting question of whether a debtor in chapter 13 has an absolute

right to dismiss his case in the face of a motion to convert the case to chapter 7 based on allegations

of bad faith conduct. Recognizing the conflicting views on this issue, I conclude that a debtor does

not have an absolute right under 11 U.S.C. § 1307(b) to voluntarily dismiss his case in the face of

acts of bad faith.  Because Peter D Letterese's (the "Debtor") conduct is inconsistent with the good faith requirements of chapter 13, I will convert the case to chapter 7.

## Procedural History

The Debtor filed a voluntary petition under chapter 13 on July 12, 2008.  *See* [DE 1].  The case was initially assigned to Bankruptcy Judge Raymond Ray.  On August 18, 2008, a Notice of Voluntary Dismissal (the "Notice") [DE 16] was filed by the Debtor.  Two days later, on August 20, 2008, creditors Bridge Publications, Inc. and Church of Scientology International filed a Motion to Convert Case to Chapter 7 (the "Motion to Convert") [DE 17], subsequently joined in by judgment creditors Drs. Douglas Ness, Scott Brody, and Marc Schwartz, and certain of their professional associations [DE 39].  The case was transferred to me on August 29, 2008.  *See* [DE 25].  I held oral arguments on September 15, 2008 and continued this matter and set it for final evidentiary hearing, which occurred on September 23, 2008.

## Facts

The Debtor filed his schedules and Statement of Financial Affairs, which were executed under penalty of perjury.  *See* [DE 1].  In "Schedule I" the Debtor claims to earn gross wages of $15,100 with a take home pay of $11,550.  *Id.*  The representation made by Debtor's counsel in open court is that these wages were never received by the Debtor, whose anticipated "consulting" job, which was purported to have been obtained around the time of filing, never actually came to fruition.  Thus, on the record before me, the Debtor has no current income.  Even more interesting is that the Debtor states in his Statement of Financial Affairs that he has had no income for the years 2006, 2007, and 2008. [DE 1].

Further, the Debtor claims to have $11,125 in monthly expenses. *See* "Schedule J" in [DE 1]. These expense include $5,200 in rent payments, $1,750 for utilities (which include a remarkable $1,050 for telephone and cable bills), $200 for home maintenance, $1,200 for food, $200 for clothing, $700 for medical and dental expenses, $250 for transportation expenses, $150 for charitable contributions and recreational activities, $1,025 for insurance (of which only $75 is for homeowner's insurance), and $450 for auto payments. *Id.* According to the Debtor this leaves him $425.00 to pay into the Chapter 13 plan. See "Schedule J" [DE 1]; Chapter 13 Plan [DE 3]. How it is that the Debtor and his spouse – who has no income, according to the Debtor's Schedule I – pay these monthly expenses with no income is one of many unexplained mysteries in this case.

The Debtor claims to have filed his 2007 Form 1040 taxes between August 16 and 18, 2008. [DE 40]. At the September 23rd hearing, the Debtor provided no evidence to support this allegation. Instead, the only evidence provided, which was submitted by the Creditors, is a self-authenticating certified Internal Revenue Service "Certificate of Lack of Record" certifying that the Debtor had not filed any Form 1040 income tax return for 2007, or sought or received an extension of time to do so, as of September 19, 2008. See [DE 42] & [DE 46].

In his Schedules, the Debtor lists a $14,000 secured claim owed to Ford Motor Credit, a $1,100,000 claim owed to the Internal Revenue Service (of which the Debtor asserts $16,160 is entitled to priority status), and $1,081,584 in unsecured claims of which $150,000 is an undisputed claim owed to MGSI[1] and $490,450 represents two judgments entered against the Debtor. *See* [DE 1]. Claim # 3 filed by the Internal Revenue Service is a $477,075.57 secured claim. *See* Claims

---

[1]MGSI is a creditor friendly to the Debtor which, among other things, paid the Debtor's lawyer's retainer in this case. *See* [DE 2].

Register. The Debtor's plan provides a payment of $424.60 monthly for 60 months, from which he proposes to pay $2,000 in legal fees paid over the first 10 months, $16,160 over the 60 month commitment period to pay the Internal Revenue Services purported priority portion of its claim, and $100 a month starting in month 11 for unsecured creditors (which amounts to a total of $5,000). *See* [DE 3].

Neither the Debtor nor his counsel appeared at the Section 341 meeting of creditors, which was scheduled for August 21, 2008. *See* [DE 30]. It should be noted that the Notice to Dismiss was filed three days prior to the 341 meeting.

## Discussion and Analysis

Section 1307 of the Bankruptcy Code provides for conversion or dismissal of a chapter 13 bankruptcy case. It states in relevant part:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including–

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28;
> (3) failure to file a plan timely under section 1321 of this title;
> (4) failure to commence making timely payments under section 1326 of this title;
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) material default by the debtor with respect to a term of a confirmed plan;
> (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521;

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or

(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

. . .

(e) Upon the failure of the debtor to file a tax return under section 1308, on request of a party in interest or the United States trustee and after notice and a hearing, the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate.

11 U.S.C. § 1307 (2008).

There is an inherent requirement of good faith in chapter 13 cases. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2008); *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983). Courts which have considered the issue since the Supreme Court's ruling in *Marrama*[2] have held that this requisite good faith conduct prevents a bad faith debtor in chapter 13 from having an absolute right to dismiss under section 1307(b). *Rosson v. Fitzgerald*, 2008 U.S. App. LEXIS 20233, 2008 WL 4330558 (9th Cir. March 13, 2008)(holding that "[a]fter *Marrama* . . .the "absolute right" position is no longer viable."); *see also Molitor v. Eidson (In re Molitor)*, 76 F.3d 218 (8th Cir. 1996); *In re Jacobsen*, 378 B.R. 805 (Bankr. E.D. Tex. 2007). I agree with this analysis and hold that a chapter

---

[2]The consensus interpretation of § 1307(b) prior to *Marama* held that a chapter 13 debtor had an absolute right to dismiss his case prior to the filing of a motion to convert. *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 619 (2nd Cir. 1999); *In re Neiman*, 257 B.R. 105 (Bankr. S.D. Fla. 2001).

-5-

13 debtor does not have an absolute right to dismiss his or her chapter 13 case in the face of bad faith conduct.

Two logical questions flow from this requirement of good faith. The first is whether the Debtor's conduct here was in sufficient bad faith as to preclude him from voluntarily dismissing this chapter 13 case, and, second, whether that conduct was in sufficient bad faith the justify conversion to chapter 7. I conclude that the Debtor's conduct here was sufficiently in bad faith as to preclude dismissal and to require conversion.

A determination as to a debtor's "good faith" or lack thereof must be analyzed on a case-by-case basis upon a consideration of the totality of the circumstances. *Kitchens*, 702 F.2d *at* 888 (11th Cir. 1983). In *Kitchens*, the Eleventh Circuit identified many factors when engaging in a "good faith" analysis, several of which provide guidance here. Relevant factors, although not exclusive to my decision of bad faith conduct, include "the amount of the debtor's income from all sources," "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13" and "the debtor's ability to earn and the likelihood of fluctuation in his earnings." *Id.* at 888-89. In addition, the Eleventh Circuit also noted that a bankruptcy court should consider, among other factors, the substantiality of the proposed repayments and the dischargeability of the debts. *Id.*

In addition, the Bankruptcy Code imposes the requirement of good faith in the proposal and confirmation of a plan. The Bankruptcy Code expressly provides that a Chapter 13 plan may not be confirmed unless "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). In enacting this provision, "Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose." *In re*

*Waldron*, 785 F.2d 936, 941 (11th Cir. 1986). Thus, bankruptcy judges are entrusted with ensuring the integrity of the system itself:

> [W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives . . . The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

*Id.*

From the outset, the Debtor fails to meet the requirements to be Debtor under chapter 13. Section 109 of the Bankruptcy Code provides for who qualifies to be a debtor under Title 11. Section 109 states in relevant part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (2008). The Debtor acknowledges that he owes $150,000 to MGSI and unsecured judgments have been entered against him and in favor of Dr. Scott Brody in the amount of $310,500 and in favor of Dr. Marc Schwartz in the amount of $179,950. The MGSI, Brody, and Schwartz debts aggregate $640,450, more than $300,000 in excess of the total permitted under § 109, and the Debtor is accordingly ineligible to be a chapter 13 debtor under 11 U.S.C. § 109(e).

Although the Debtor challenges the Brody and Schwartz judgments, they nonetheless count toward the statutory maximum. "A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law." *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996) (internal citation omitted). Therefore, the notion of a liquidated debt relates to an

amount of liability, not the mere existence of liability. *Id.* A debt is considered contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability have already vested prior to a debtor filing for bankruptcy protection. *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997). A judgment which establishes monetary liability in favor of a party is noncontingent and liquidated as to the sum owed. The pendency of an appeal does not affect the outcome:  I am precluded from revisiting a judgment entered in a state court against the Debtor by principles of collateral estoppel.

When federal courts are asked to consider the preclusive effect of a state court judgment under the doctrine of collateral estoppel, federal courts must apply that State's law of collateral estoppel. *See Agripost, Inc. v. Miami-Dade County, ex rel. Manager*, 195 F.3d 1225, 1229 n.7 (11th Cir. 1999); *Vazquez v. Metropolitan Dade County*, 968 F.2d 1101, 1106 (11th Cir.1992). The essential elements that are required for the application of the doctrine of collateral estoppel under applicable Florida law were outlined in *Department of Health & Rehabilitative Services v. B.J.M.*, 656 So. 2d 906 (Fla. 1995). *See also Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006). In *B.J.M.*, the Florida Supreme Court held that for a party to be collaterally estopped, "the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.* at 910. "collateral estoppel precludes relitigation of issues actually litigated in a prior proceeding." *Id.*

I am presented with two state court judgments. They are final and binding on me absent a reversal on appeal. However, the judgment is in full force and effect during the pendency of any appellate process in the state court. Nothing in the record persuades me that the state court decisions

are not valid or binding on me. Thus, the Debtor was clearly not eligible to be a debtor in chapter 13 at the time of filing. This fact alone is *prima facie* evidence of bad faith.

Further, the Debtor fails to meet the requirements of having "regular income" as required by section 109(e). The test for "regular income" is not the type or source of income, but rather its regularity and stability. *In re Varian*, 91 B.R. 653, 654 (Bankr. D. Conn. 1988) (citing *In re Campbell*, 38 B.R. 193, 195 (Bankr. E.D. N.Y. 1984)). This analysis is not limited to payment ability at the Petition Date but instead the court in "determin[ing] whether a debtor has regular income . . . may [also] view the circumstances prospectively." *In re Goodrich*, 257 B.R. 101, 103 (Bankr. M.D. Fla. 2000); see also *In re Mercado*, 376 B.R. 340, 344 (Bankr. M.D. Fla. 2007). Practically speaking the court must conclude whether the debtor is able to make the required payments under the chapter 13 plan. *Goodrich*, 257 B.R. at 103. Thus, "[t]here must be some factual basis for the court to determine the regularity and stability of the debtor's income." *In re Mozer*, 1 B.R. 350, 352 (Bankr. D. Colo. 1979).

The Debtor states that he has had no income for the past three years. The Debtor suggests that he was at the time of filing in negotiations to become a "consultant," the type of which unspecified, which assertedly would have paid him a substantial salary. This purported job fell through and there is nothing on the record demonstrating that the Debtor is currently employed or has any prospect of becoming so. The Debtor has failed to meet his burden of showing that he has regular income to support payments into a chapter 13 plan. Instead, his lack of income over the past three years, combined with no evidence to show any ability to obtain a job or to fund the proposed chapter 13 plan, exhibit bad faith on behalf of the Debtor under the *Kitchens* factors.

-9-

The Debtor also has presented a chapter 13 plan in apparent bad faith. The expenses listed are enormous and appear to be completely disconnected from the Debtor's income. I have a difficult time understanding how an individual with no income in the past 3 years claims expenses at the level listed in Schedule J, including, for example, $1,050 for monthly telephone and cable services.

The proposed treatment of creditors under the Debtor's Plan is equally suspect. The debtor alleges only $16,160 in priority debt owed to the Internal Revenue Service without explaining how he proposes to deal with the IRS's filed secured claim for $477,075.57. It is my duty to ensure that the Debtor's motives are sound and that there is unfettered honesty and disclosures as to the state of the Debtor's finances. The plan provided is not consistent with the record before me and thus, the only conclusion I can draw is that the plan was offered in bad faith.

A chapter 13 debtor has a statutory duty to provide his prepetition tax returns. Section 1308 of the Bankruptcy Code states in relevant part:

> Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.

11 U.S.C. § 1308(a). Although the Debtor asserts that he has filed his 2007 Form 1040 tax return with the Internal Revenue Service, the only evidence before me is the certification from the IRS that he had filed neither that return nor a request for an extension to do so as of September 19, 2008. It therefore appears that the Debtor is in noncompliance with section 1308.

Finally, the Debtor's failure to appear at the scheduled Section 341 meeting of creditors is inexcusable. The filing of a notice to dismiss the case three days prior to this meeting did not relieve the Debtor of his obligation to appear at this meeting. Creditors and the standing Chapter 13

trustee expended resources preparing and attending the 341 meeting with a full expectation that the Debtor would appear. The Debtor's failure to do so is unacceptable, in bad faith and offends the orderly operation of the bankruptcy system itself.

Based on the totality of the circumstances on the record before me, I conclude that the Debtor has acted in bad faith and that there is a sufficient basis for the conversion of this case from chapter 13 to chapter 7. The Debtor is ineligible to be a debtor under chapter 13, and on that basis alone, notwithstanding the litany of other misrepresentations and lack of financial transparency, he could not confirm a chapter 13 plan under the provisions of 11 U.S.C. § 1325. When considered along with the other bad faith conduct listed above, I conclude that cause exists for the conversion of this case to a case under chapter 7 pursuant to 11 U.S.C. § 1307(c). Accordingly, it is **ORDERED** that:

1. Debtor's Notice of Voluntary Dismissal [DE 16], treated as a motion to dismiss, is **DENIED**.

2. Creditors Bridge Publications, Inc. and Church of Scientology International's Motion to Convert [DE 17], joined in by Dr. Douglas Ness, Dr. Scott Brody, and Dr. Marc Schwartz [DE 39] is **GRANTED**.

3. This case is converted to a case under chapter 7.

4. The chapter 13 trustee, within 30 days of the date of this order, shall file an accounting of all receipts and distributions made, and list any pending obligations incurred under the plan. A copy of the report shall be served on the U.S. Trustee.

5. The debtor, within 15 days of the date of this order, shall file a schedule of unpaid debts incurred after the commencement of the chapter 13 case as required by Bankruptcy Rule 1019(5) and Local Rule 1019-1(B). The schedule must be accompanied by a matrix of creditors as required by the "Clerk's Instructions for Preparing, Submitting and Obtaining Service Matrices". The debtor or debtor's attorney is required to provide notice to those creditors pursuant to Local Rule 1019-1(B). Failure to comply may also result in sanctions being imposed by the court. Debts not listed or noticed timely will not be discharged. A copy of this schedule shall be served on the chapter 7 trustee.

6. The chapter 13 trustee shall, within 10 days from the date of this order, turn over to the chapter 7 trustee all records of the estate remaining in the chapter 13 trustee's custody and control, as required by Bankruptcy Rule 1019(4).

7. The chapter 13 trustee shall dispose of funds in the trustee's possession in accordance with Local Rule 1019-1(D), unless otherwise ordered by the court.

8. The debtor shall file, within 15 days of the date of this order:

   a. the statements and schedules required by Bankruptcy Rules 1007(c) and 1019(1)(A) in accordance with Local Rules 1007-2 and 1009-1(D), if such documents have not already been filed.

   b. the Official Form 22 A "Statement of Current Monthly Income and Means Test calculation for Use in Chapter 7 Only", required under Local Rule 1019-1(H);

   c. payment advices as required by Interim Bankruptcy Rules 1007(b)(1) and 1007(c) and Local Rule 1007-1(F); and

   d. if not already filed, the certificate and debt repayment plan, if any, required by §521(b), a certification under §109(h)(3) or a request for a determination by the court under §109(h)(4).

9. The debtor shall file, within 30 days of the date of this order, a statement of intention with respect to retention or surrender of property securing consumer debts, as required by 11 U.S.C. §521(a)(2)(A) and Bankruptcy Rule 1019(1)(B), and conforming to Official Form 8.

10. The debtor shall provide notice to affected parties of the deadline set pursuant to Local Rule 1019-1(F)(1) for filing by a nongovernmental unit a request for payment of an administrative expense.

11. If the debtor had been granted permission to pay the chapter 13 filing fee in installments and the debtor seeks waiver of the balance of the filing fee due, the debtor must file the waiver application prior to the next installment payment date to avoid dismissal of the case for nonpayment.

### #

Copies furnished to:

Alan J. Perlman, Esq.

Charles D Franken, Esq.

Simeon D. Brier, Esq.

Robin Weiner, chapter 13 Trustee

U.S. Trustee

Attorney Perlman is directed to serve a conformed copy of this order on all interested parties not listed above.